UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. S1-4:10CR449 CEJ |
| MARK EDWIN SHORES, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Presently pending are the Defendant's motions to suppress evidence and statements, and a motion to suppress evidence in superseding indictment. The undersigned held a hearing on the Defendant's motions on March 11, 2011, and a transcript of the proceedings was filed on March 16, 2011. The undersigned entered a briefing schedule, however, the parties filed no additional memoranda.

As to the evidence adduced at the hearing on the Defendant's motions to suppress, as well as a review of the transcript of the hearing, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Anthony Boettigheimer is a detective with the Metropolitan St. Louis Police Department. He is currently assigned to the violent offender unit, and is in a task force which includes police officers from the City of St. Louis as well as agents of the Alcohol, Tobacco and Firearms ("ATF"). On September 16, 2009, Boettigheimer applied for a warrant to search the premises of 3714 Melba Place

in St. Louis County, Missouri. The application for the search warrant and the affidavit attached thereto was presented to a United States Magistrate Judge on that date, and Boettigheimer swore to the accuracy of the affidavit attached to the application. The application and affidavit state in substance as follows:

On September 14, 2009, Boettigheimer and other agents met with a confidential informant who Boettigheimer has known for approximately three years. The informant has provided credible and accurate information on several occasions in the past. This information resulted in the arrest of multiple defendants for drug and gun violations with some of these cases being prosecuted in state court and at least one being prosecuted in the United States District Court. When Boettigheimer met with the CI, the confidential informant told him that a person he knows as "Mark Sure" was in possession on that date of heroin, cocaine and firearms at Mark Sure's residence at 3714 Melba Place in St. Louis County, Missouri. The confidential informant said, based on his personal observations, Mark Sure obtains coke and heroin from a source unknown to the informant, brings the bulk coke and heroin back to 3714 Melba Place, where Mark Sure breaks down heroin and cocaine, repackages it, and then offers it for sale to other individuals. The confidential informant told Boettigheimer that on September 9, 2009, the informant observed a large amount of heroin and cocaine inside the residence. He stated that he also observed a black, semi-automatic handgun inside the residence on that date. Further, again on September 11, 2009, the confidential informant was inside the residence and observed a large amount of heroin at that location. The informant also told Boettigheimer that Sure was in the penitentiary in Michigan for narcotics violations and had been released approximately two years ago.

At this point, Boettigheimer and his partner drove the confidential informant by 3714 Melba Place, and without hesitation, the informant told the agent that "Mark Sure" lives at that residence, and that is the residence where he observed heroin, cocaine, and a handgun on September 9 and September 11, 2009. The confidential informant also pointed out a gold Cadillac, which the informant said Mark Sure's wife owned. Although the confidential informant does not know the wife's real first name, knowing her only as "Lady," he did know that her maiden name was Carter before she married the defendant.

On September 14, 2009, Boettigheimer and other agents conducted a surveillance on 3714 Melba Place, which was made difficult because of the location of the house. They observed a male enter the residence on foot, stay two or three minutes, then exit the residence. They told the Magistrate Judge that this activity is consistent with dealing in narcotics. Boettigheimer and other agents also conducted a computer search, trying to find "Mark Sure" in the regional crime matrix. By doing this they determined that Mark Sure actually was the defendant Mark Shores. They determined that he had a criminal record of convictions, and found that he had been convicted in the State of Michigan for delivery or manufacture of controlled substances, assault with a dangerous weapon, and a separate felony weapons violation. They also determined that the Defendant had felony convictions in the State of Missouri for drugs and weapons violations. A computer search conducted by Boettigheimer on the gold Cadillac showed that it was registered to Garnette Shores, at 3714 Melba Place. The computer check showed that Mark Shores home address was 3714 Melba Place, and further showed that Shores' wife's maiden name was "Carter." Boettigheimer next obtained photographs of Mark Shores and Garnette Shores, and displayed them to the confidential

informant. The confidential informant, without hesitation, identified Shores as the person he knew as Mark Sure, and identified the female as Shore's wife.

Further, on September 15, 2009, the confidential informant contacted Shores on the telephone, and set up a purchase of heroin from him. Shores agreed to meet the confidential informant in north St. Louis. The police set up a surveillance and observed the Defendant and the confidential informant conduct a hand-to-hand transaction. After the hand-to-hand transaction, they obtained a quantity of white powder from the confidential informant. The confidential informant told the agents that Shores sold him the white powder. A lab analysis showed the item obtained from the informant to be heroin.

Based on the above, the United States Magistrate Judge issued a warrant to search 3714 Melba Place for heroin, cocaine, cash, drug paraphernalia, documents, any matter showing residency and control over the premises.

On September 16, 2009, the agents executed the search warrant. They went to the house to execute the search warrant, and were admitted to the house. Inside the house, they observed Mark Shores, Garnette Shores, two other adults and a child. They advised Shores of the warrant, and immediately advised him of his Miranda rights. They did this by reading a full Miranda form to him from the St. Louis police department form. Shores said that he understood his rights, and he answered the officers' questions. They asked him first if any narcotics or firearms were in the house, and he asked them what they meant by that. When they rephrased the question to ask him if any guns or drugs were in the house, he said there were none. The house was then searched by the officers, and they found heroin, crack cocaine, $2,700 in cash, numerous amounts of drug paraphernalia, and personal papers in the Defendant's name. After finding the drugs, the agents arrested Shores for this

4

violation, and again advised him of his full Miranda rights, which he stated he understood. They asked him about finding the drugs on the premises, and after taking a deep breath, he said something to the effect of, "You planted the drugs on me." During the time this took place, the Defendant appeared to be coherent, not intoxicated, and no threats or promises were made to the Defendant.

The Defendant was indicted on the above charges approximately one year later on September 9, 2010, and a warrant was issued for the Defendant's arrest based on the federal indictment. On September 9, 2010, Boettigheimer and other agents executed the arrest warrant at 3714 Melba Place. On that date, they went to the house located at 3714 Melba Place, and knocked on the front door. They were allowed entry to the house by the Defendant's wife, Garnette Shores. Det. Bottigheimer asked Mrs. Shores if the Defendant was in the house, and she stated that he was in the back bedroom. The agents then went to the back bedroom and placed the Defendant under arrest. He was arrested on the basis of the federal arrest warrant issued on September 9, 2010. While in the bedroom, the agents noticed a strong odor of marijuana. Because of the smell of marijuana, and because the Defendant was arrested and in custody, they advised the Defendant of his complete Miranda rights. After advising the Defendant of his rights, they moved both Mark Shores and Garnette Shores to the dining room. They asked Mark and Garnette Shores if there was marijuana in the house, and they both responded that there was marijuana in the house located in a box in the dresser in the bedroom in which Mr. Shores had been arrested.

Immediately after this, the officers removed the Defendant to a police vehicle which was parked in front of the house. They moved him there so they could keep him in a secure location while they conducted a further investigation. He was secured in the back seat of the police vehicle and handcuffed to his seat belt. They did this because the Defendant had past convictions for violence,

and allegedly kept firearms on his premises.  They testified that they did not remove him because he might refuse to consent, that the reason for his removal was officer's safety, and they never asked Mr. Shores for his consent to search.  Instead, they asked Mrs. Shores for consent to search the house.  They gave her a detailed consent to search form, and read the consent to search form as she read it along with them.  They advised her that she had a right to refuse to consent to the search or to sign the form.  No threats or promises were made to Mrs. Shores to obtain her consent to search the house, and Mrs. Shores was evidently cooperative with the police.  After obtaining Mrs. Shores signed consent, Det. Bottigheimer and other agents searched the house and seized marijuana, heroin, and a fully loaded revolver.  The agents then conveyed the Defendant to a location where he was booked.  He was eventually again advised of his full Miranda rights, and the Defendant stated he understood his rights.  They asked him about the possession of the heroin and the firearm.  He stated something to the effect of, "You kicked my house in once, you know what I do, I have to get by some way and protect myself."  The Defendant was not threatened or promised anything in order to obtain this statement, and he appeared to be coherent, and not under the influence of drugs or alcohol.

### Conclusions of Law

A.  The Warrant to Search 3714 Melba Place, St. Louis County, Missouri

Based on the above findings, the undersigned concludes that the search of 3714 Melba Place and the items seized pursuant to the warrant should not be suppressed.  For a search warrant to be valid, it must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found in the place to be searched.  Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387

6

U.S. 294 (1967). The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1949). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context--not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). All that is needed is a "fair probability" that contraband or evidence of a crime may be found on the premises to be searched. Illinois v. Gates, supra. Further, probable cause may be established from information obtained from a reliable informant even when that informant can not be corroborated. United States v. Pressley, 978 F.2d 1026 (8th Cir. 1992). A search warrant must also describe with particularity the premises to be searched and the items to be seized. Rule 41, Federal Rules of Criminal Procedure.

As to the particularity of the search warrant, the warrant specifically details the house to be searched by both address and description as to its location, and specifically states the items to be seized. Thus, the warrant meets the particularity requirements of Rule 41, Federal Rules of Criminal Procedure.

Further, the undersigned concludes that the affidavit provides at least a "fair probability" that the items named in the search warrant will be found on the premises to be searched. In this regard, in United States v. Sherrill, 27 F.3d 344 (8th Cir. 1994), officers applied for and obtained a warrant to search the defendant's house. The facts relied on by the officers to support the warrant to search include a reliable informant personally observing the defendant in possession of cocaine in his house shortly before the warrant was issued, and observations of the police officers

7

showing pedestrian traffic consistent with drug sales.  The court held that the information of the confidential informant, along with the corroboration by surveillance, provided ample probable cause both to search the house, and to arrest the defendant before or after the search occurred.  United States v. Sherrill, 27 F.3d 344, 346, 347.

The undersigned concludes that the same situation exists in the case now at bar as was present in Sherrill, supra; and Pressley, supra.  In the present case, the confidential informant possessed detailed information based on his first hand experience of the Defendant being in possession of cocaine, heroin, and firearms at 3714 Melba Place.  In addition, the informant observed this heroin and firearms to be at that location less than five days before the execution of the search warrant, and, in fact, had purchased heroin from the Defendant just a day before the search warrant was issued.  Further, the information was corroborated not by just surveillances of the premises, but by corroborating the detailed information which the informant provided to Bottigheimer about the Defendant, including his prior record, the fact that he had been incarcerated in Michigan, the reason for his incarceration in Michigan, and an accurate description of the Defendant's wife's vehicle, and her maiden name.

In addition to the corroboration, the confidential informant had been used on several occasions by the detective over the previous three years, and the informant's information had been found to be reliable and ended with the prosecution of matters in state and federal court.  Thus, the undersigned concludes that the informant's information that there was heroin, cocaine and weapons on the premises of 3714 Melba Place, is substantial and ample, and forms an adequate basis for probable cause to search the premises.  Therefore, the items seized should not be suppressed.

B.  Statements Made by Defendant After his First Arrest and Second Arrest

As to statements made by the Defendant after his first and second arrests, they were made after the Defendant was fully advised of his rights on at least three occasions, stated he understood his rights, and waived his rights by answering questions from the detectives. The Defendant was coherent, did not appear to be under the influence of drugs or alcohol, and he was not promised anything or threatened in any way to obtain his statements. Therefore, the undersigned concludes that the statements were voluntarily made after the Defendant was fully advised of his rights, and should not be suppressed. See, Miranda v. Arizona, 384 U.S. 436 (1966); North Carolina v. Butler, 441 U.S. 369 (1979); Colorado v. Connelly, 479 U.S. 157 (1986); Moran v. Burbine, 475 U.S. 412 (1985).

C. Consent Search Conducted on September 9, 2010

Based on the above facts, the undersigned concludes that the consent to search given to the detectives by Garnette Shores was lawful. The Defendant alleges that the Supreme Court case of Georgia v. Randolph, 547 U.S. 103 (2006), requires that the consent be found not to be valid. In Randolph, supra, the Court held that if two parties with authority to consent are physically present contemporaneously, and one party consents to the search, but the other party refuses consent, then the refusal to consent is binding on police officers attempting to justify their search on a consent basis. The undersigned concludes, however, given the facts in the case now at bar, Randolph does not preclude a consent search, and, in fact, supports the factual context occurring in this case in validating a consent to search. The Court in Randolph makes clear that a defendant must both be present and actively object to the search in order to vitiate the consent of a second party. The fact that a person is in police custody and nearby, is not enough to vitiate the consent, particularly if that party is not requested to consent. In so holding, the Court stated in Randolph as follows:

9

> . . .Although the *Matlock* defendant was not present with the opportunity to object, he was in a squad car not far away; the *Rodriguez* defendant was actually asleep in the apartment, and the police might have roused him with a knock on the door before they entered with only the consent of an apparent co-tenant. If those cases are not to be undercut by today's holding, we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, a co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

547 U.S. at 121.

Thus, based on the above, the undersigned concludes that given the factual context of the case now at bar, Randolph makes clear that in this same context, the consent to search by Garnette Shores is binding, even if the officers purposely did not ask the Defendant for his consent to search his house. Given the fact that the uncontroverted evidence shows that the officers did not remove the Defendant for the purpose of not having him present when they asked his spouse for consent, but did so only for their own safety, makes the validity of the consent to search in the case now at bar even more compelling than in the examples cited in Randolph, id.

In addition, the prevailing case law in this circuit also requires that the consent to search be found valid. In United States v. Hudspeth, 518 F.3d 954 (8th Cir. en banc 2008), the Court found that a prior refusal of consent by a non-present husband, did not vitiate the wife's later consent to search the house and the computers in the house when the defendant was not present at the home. In Hudspeth, drug agents searched the business computer of the defendant pursuant to a search warrant issued by a judge for evidence of illegal sales of methamphetamine. In conducting the search, they discovered that the defendant had child pornography on the computer. The agents suspected that the defendant also possessed child pornography on his home computer, and asked him for consent to search the home computers. The defendant refused to consent. The agents then arrested

the defendant, and went to the defendant's home. After arriving at the home, they requested his wife's consent to search his home computer. Eventually she consented to the search. In holding that Georgia v. Randolph, id. did not vitiate the search, the Court stated as follows:

> The legal issue of whether an officer's knowledge of the prior express refusal by one co-tenant negates the later obtained consent of another authorized co-tenant is a matter of first impression in this court.

518 F.3d 954, 960.

The opinion then goes on to state that the defendant must be both physically present and express refusal to consent to fall within the Randolph exception. In so holding, the Court stated as follows:

> ...The *Randolph* majority candidly admitted "we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact *at the door and objects*, the co-tenant's permission does not suffice for a reasonable search." *Id.* at 121, 126 S.Ct. 1515 (emphasis added). Hudspeth was not at the door and objecting and does not fall within *Randolph's* "fine line." Thus, we must conclude that Cpl. Nash's failure to advise Mrs. Hudspeth of her husband's earlier objection to a search of the home computer did not convert an otherwise reasonable search into an unreasonable one.

518 F.3d 954, 960, 961.

Based on the above, the undersigned concludes that the law of this circuit compels the undersigned to find that the consent is valid in this case despite the fact that the agents did not request the Defendant's consent. In the case now at bar, there was no refusal by the Defendant, and he was not physically present. Therefore, based on both the Supreme Court's finding in Randolph, and the en banc decision of the Court of Appeals in Hudspeth, the undersigned concludes that the consent

is valid, and the evidence seized pursuant to consent, including the firearm and drugs, should not be suppressed.[1]

## Conclusion

Therefore, the Defendant's motions to suppress should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. #24], and Defendant's Motion to Suppress Evidence in Superceding Indictment [Doc. #38] be denied.

Further, as to the motions to suppress evidence and statements, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and

---

[1] Although not specifically challenged in this regard, the undersigned notes that the police officers may search a premises if they obtain consent to do so from someone with adequate authority over the premises. Further, courts recognize common authority to consent from each person whose mutual use of the property demonstrates joint access or control for most purposes. See United States v. Matlock, 415 U.S. 164, 171 (1974). Further, consent is voluntary if it is the product of free choice, and not given under coercion or duress. Voluntariness is a fact question to be determined from the totality of the circumstances present. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). In the case now at bar, the evidence shows that Garnette Shores was married to the Defendant and resided at 3714 Melba Place with him. She allowed the agents access to the house, and told them where her husband was located. In answering questions about where the marijuana was located, she told the agents that marijuana was in a box in the rear bedroom of the house. She appeared to cohabit the house with the Defendant and to have access to all areas of the house. Thus, the agents believed that she had mutual use of the property and joint access or control for most purposes. In addition, the evidence showed that Garnette Shores was not in custody at the time she consented to the search, was not physically threatened, intimidated, or punished by the police; was told that she was under no obligation to grant the consent, and, in fact, could refuse the consent, and was not promised anything or threatened in any way to obtain her consent. Therefore, the undersigned concludes that she had authority to grant the consent, and voluntarily did so. See United States v. Chaidez, 906 F.2d 377 (8th Cir. 1990).

determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

                              /s/ Terry I. Adelman
                 UNITED STATES MAGISTRATE JUDGE

Dated this  25th  day of April, 2011.